UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **RHONDA BEVERLY,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | No. 4:05cv00029AS |
| ) | |
| **BMW CONSTRUCTORS, INC.,** ) | |
| ) | |
| **Defendant** ) | |

### *MEMORANDUM, OPINION AND ORDER*

This case was filed by very able counsel on April 14, 2005 in which the complaint alleged employment discrimination based on gender under the Civil Rights Act of 1964, and the Civil Rights Act of 1991, 42 U.S.C. §2000e.  This court takes notice of the proceedings thus far in this case, and the defendant employer is now seeking summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp v. Catrett*, 477 U.S. 317 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir. 1998).  *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324  (quoting FED.R.CIV.P. 56); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir. 1998). A question of material fact is a question which will be outcome determinative of an issue in the case.  The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248.  Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts shows that there is a genuine [material] issue for trial.'" *Id.*  The nonmoving party cannot rest on its pleadings, *Weicherding v. Riegel*, 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918 (7th Cir. 1994);  nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir. 1995).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996).  Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252-55.  Applying the above standard, this Court addresses defendant's motion.

The issues have been carefully briefed and an oral argument was held in Lafayette,

2

Indiana on September 7, 2006. The factual setting of this case and the nature of the employment environment here is very important. Also extremely important is the nature of the pre-existing and present relationship of three employees all below the managerial level. Rhonda Beverly (hereafter "Beverly") was married to Richard Boring (hereafter "Boring") in 1988, and their marriage was the subject of a highly contentious and hotly contested divorce proceeding which ended their marriage in 2003. Also in the picture in late 2003 and thereafter was a person named Robert Beech (hereafter "Beech"), also in that workforce below the managerial level. Beverly and Beech began dating in late 2003. All three of these persons were members of the Boilermakers union and all three worked on and off of the NIPSCO-Schafer site. They were assigned out of a union hall. No one should be surprised that this mix of union blue-collar employees became explosive. It is very important to be very precise about what is actually being requested here and who did what to whom. No claims are made here by any mistreatment that is claimed by Robert Beech at the hand of Richard Boring. To the contrary, Beverly is most certainly claiming under provisions of Title VII of the Civil Rights Act of 1964 that she is entitled to some species of damage for the way that Boring treated her in this workplace. It was of some considerable interest to this court that both counsel for the plaintiff and counsel for the defendant in the aforesaid hearings in Lafayette, Indiana on September 7 indicated that Beverly continued to be assigned to work facilities for this employer out of the Boilermakers Union down to the present. There was a very considerably off-premises disputes and controversy between

3

Beverly and Boring. The Jasper County Indiana sheriffs got in the act because Beverly had made at least six reports to them regarding conduct of Boring. There were obvious attempts of Boring to reach and deal with Beverly away from the workplace, a union steward got into the act in trying to deal with the tensions involved. The actions of Boring are summarized as follows:

> According to Beverly, Boring began leaving her "notes" on various walls at or near her jobsite in March or April 2004.
>
> According to Beverly, the notes were friendly at first (e.g. "Hi CC," which meant "Hi Cupcake," and have a nice day), but later became threatening.
>
> According to Beverly, Boring's notes consisted of the following
>
>> A. A note that stated, "I would like to see my ex-wife," which was changed to say: "I would like to see the cunt hanging from a tree so I could sit underneath it and sing a song about it."
>>
>> b. "Pictures of a little man with spiky hair, which is what he draws on his welding hood and all his – kind of his little symbol, drew that man holding a shotgun. It said 'I wanted to go on a hillbilly hunt.'"
>>
>> c. A note that stated: "CC will be no more."
>>
>> d. Notes to Beech that stated: "Beech, your days are numbered" and "You only have two days left."
>>
>> e. A count-down in a port-a-john that stated: "marking out the days which [Beverly] assumed were days till [Boring] got out of the Work Release Program he was," which were meant as a

>threat toward Beech.
>
>f. Notes between Boring and another employee, Frank Dado, regarding Boring and Beech fighting, including a note to the effect that Dado "ha[d] $20 on" Boring.

>According to Beverly, Boring came around the corner one day and asked her "What's wrong? Don't you like the notes I'm leaving you?" because she "kept erasing things" [he had written in] places because it was embarrassing.
>
>Beverly believes that Boring left her the notes "because he wanted [her] to talk to him" and to make her uncomfortable, and because he was angry about the divorce and angry that she was dating Beech.
>
>According to Beech, "cunt" is Boring's "favorite word," and he has used it in threatening Beech.

Beverly complained to two union representatives and their involvement is not something that can be charged against this employer. The union is not a party defendant here. Beverly submitted a written complaint to the union representative, Abe Spencer, on April 14, 2004. Apparently, another Union representative named Gary Gramblespaker was also involved. Finally on April 15, 2004, project manager Eric Delaney who is in management of the defendant found the complaint in his office and immediately forwarded it to BMW Human Resources Manager, Patrick Guenin. The exact language of the written complaint is as follows:

>To whom it may concern:
>   I am writing this letter in regards to the harassment I have been reciveing (sic) at work. I am at this time putting you on notice. I would like to see that only is the harassment stoped,

5

> (sic) but the person responsible be held accountable for their actions. They have already been verbaly (sic) warned and yet it continues. I have reported this problem to my union stuard (sic) on two separate occaisons (sic) and have seen no result. I would also like to informe (sic) you that I will mostly be taking this matter to the EEOC. This letter is my third attempt to resolve this problem. It was my understanding that their was a zero tollerance (sic) for harassment in the work place.

Human Resources Manager Guenin, after receiving a copy of the written complaint, began to investigate it the same day of its receipt. He interviewed Beverly, Eric Delaney, the project manager, John Bednash, the night shift superintendent, Abraham Spencer, the night shift union steward, and Beech. Guenin spoke with Beverly as a part of the investigation, and she complained of the following behavior by Boring:

> a. He was writing notes on the walls involving her initials. She assumed he was writing the notes. She had erased several of the messages.
>
> b. He was trying to transfer to the night shift with her and Beech in order to bother her and Beech.
>
> c. He had informed her that he was going to make a lot of problems for her and a lot of pain for Beech.

Guenin also looked at the notes on the walls and project manager Delaney met with Boring who denied having written any of the notes in issue. Those interviewed in the investigation stated that they did not see who made the notes. Guenin concluded that the notes were inappropriate and must not continue. It was obviously apparent to Guenin that this was a continuation of a difficult divorce situation. Delaney counseled Boring on April 16, 2004 that regardless of who had written the notes, the graffiti must stop immediately. Guenin had

6

the notes photographed and removed and provided Beverly with a summary of their meeting. According to what appears to be undisputed, Beverly did not further contact Guenin regarding Boring's behavior. This appears to be prompt and corrective action. *Williams v. Waste Management of Illinois*, 209 F.3d 1044 (7th Cir. 2004).

By April 2004, the boiler project was at a point near completion and required fewer employees. By that time, a number of employees were returned to the Boilermaker Union Hall to be dispatched according to union hall policies. In and around April 11, 2004, BMW laid off six male employees including five boilermakers and one operator. The next week the BMW laid off five employees including four boilermakers and one operator. Of that group, Beverly was the only female. The remaining layoffs at that time were male including Beech. The following week on April 25, 2004, three male boilermakers were laid off. Beverly is the only employee that has made a complaint regarding discrimination or harassment. Thus, this plaintiff was not treated less favorably than other similarly-situated employees. *See Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675 (7th Cir. 2005).

This court recognizes that the factual setting of this employment is significantly different than the one referenced in *Merritor Savings Bank v. Vinson*, 477 U.S. 57 (1986). To cut to the chase, there simply is no evidence here that would support a discriminatory environment. This court is well aware of the reasoning and result in *Dey v. Colt Construction and Devco*, 28 F.3d 1446 (7th Cir. 1994), and this factual situation simply does not fit into the judicial mold enunciated in *Day*. There were factors clearly apparent in *Day*

7

that are simply not present here.  It is beyond any doubt enlightened corporations in this modern time no doubt might provide some species of counseling for personal circumstances such as those described here.  That suggestion does not imply that either the Civil Rights Act of 1964 or the Civil Rights Act of 1991 <u>require</u> them to do so or be accused of discrimination.  It is very hard to tell what else this employer under these circumstances is required to do under those statutes.  Anything it may have done could have resulted in litigation.  Certainly it would have resulted in further litigation if they had fired Boring and kept Beech and Beverly.  They did not do that.

With regard to the claim of retaliation, at the proceedings in Lafayette on September 7 and since, this court has given very close attention to the most recent explication of the concept of retaliation by the Supreme Court of the United States in *Burlington Northern and Santa Fe Railway Co. v. White*, 125 S. Ct. 2405 (2006).  That opinion except for a separate concurrence by Justice Alito is unanimous.  Given a liberal and generous examination of the facts here, they simply do not support any claim for retaliation as enunciated by Justice Breyer in *Burlington Northern*.  Much of the conduct and hostility of Boring against Beverly did not occur in the workplace.  Much of the attempts to deal with it were in fact by union representatives and what they did or failed to do is not at the doorstep of this defendant employer.  When the focus is on the efforts made by this employer once the situation was brought to its attention in writing, it is hard to conceive of what else it might have done without incurring further wrath and litigation.  The salient fact is according to what was

8

stated at the hearing on September 7 is that this plaintiff is still getting work assignments with this defendant out of the union hall.

When this record is examined with exactitude, the record fails to demonstrate a violation by this employer against this plaintiff under either the Civil Rights Act of 1964 or 1991, and the defendant employer is entitled to summary judgment as a matter of law.  The Clerk is ordered to enter such judgment for this defendant against the plaintiff with each party to bear its own costs**.  IT IS SO ORDERED.**

**DATED:** September   12  , 2006

              **S/ ALLEN SHARP**
              **THE HONORABLE ALLEN SHARP**
              **JUDGE, UNITED STATES DISTRICT COURT**